IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHARLES M. DALZIEL, JR., : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION NO. |
| : | 1:18-CV-03902-LMM |
| v. : | |
| : | |
| TURNER'S GARAGE, INC., : | |
| WENDELL TURNER, and : | |
| HEATHER ROSE, : | |
| : | |
| Defendants. : | |

## **ORDER**

This case comes before the Court on Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction. Dkt. No. [4]. After due consideration, the Court enters the following Order.

## I.   **BACKGROUND**[1]

Plaintiff Charles M. Dalziel, Jr. is a Georgia resident. Dkt. No. [9] ¶ 4. Defendant Turner's Garage, Inc. ("Turner's") is a business incorporated in and with its principal place of business in South Carolina. Dkt. No. [1-1] ¶ 1. Defendant Wendell Turner is the owner of the garage, and Defendant Heather

---

[1] All facts in the background are taken from Plaintiff's Complaint and are undisputed unless otherwise stated.

Rose is employed by the garage as its Marketing Assistant and Service Advisor. Id. ¶ 2. Both individual Defendants are South Carolina residents. Id. ¶¶ 4, 5.

Plaintiff's Complaint stems from repairs Defendant Turner's made to Plaintiff's 2006 Volvo SC60. Dkt. No. [1-1] ¶ 7. After the vehicle broke down in South Carolina on March 23, 2018, Plaintiff left it at Turner's, an AAA-affiliated garage in South Carolina, and returned to Georgia. The following week, Plaintiff agreed over the phone to have Turner's replace the engine and perform other repairs in South Carolina. Id. ¶ 10. According to Plaintiff, Defendant Rose represented that the repairs and the engine itself would be protected by a "24 month/24,000 mile" warranty, which was consistent with Plaintiff's understanding of the typical AAA warranty terms. Id. ¶¶ 7, 9. Plaintiff agreed to the repairs in reliance on that representation. Id. ¶¶ 10-11. On April 12, 2018, Plaintiff picked up his car from Turner's and paid the invoice for the repairs. Id. ¶ 13. At that time, Defendant Rose provided Plaintiff with a "Peace of Mind Warranty" from NAPA Autocare Center, which Plaintiff did not review. Id. ¶ 14.

On June 5, 2018, Plaintiff's car broke down in Georgia due to an issue with the engine cooling system, leading Plaintiff to seek further repairs at his local AAA-affiliated mechanic's shop under the warranty. Id. ¶¶ 15-16. The AAA representative informed Plaintiff that the warranty provided by the garage did not cover the repairs required for his vehicle. Id. ¶¶ 16–18. Plaintiff then reviewed the terms of the NAPA warranty, only to learn that engine repairs had been expressly excepted. Id. ¶ 17. NAPA and Defendant Turner's both refused to cover

the cooling system repairs under the warranty, and Defendant Turner denied that Turner's had done any work on the cooling system despite invoice entries apparently reflecting such work. Id. ¶¶ 30-34. Plaintiff then experienced two additional vehicle breakdowns requiring replacement of the ignition coil, a spark plug, and a turbo hose. Id. ¶¶ 36-37. Defendant Turner refused to pay for the ignition coil and spark plug replacement, again stating that Turner's had not performed repairs on the parts in question. Id. ¶ 36.

Plaintiff alleges Defendants intentionally misrepresented the coverage of the warranty and omitted the fact that the warranty expressly excepted engine repair. Id. ¶¶ 18–19. Further, Plaintiff alleges that he was fraudulently induced to agree to the repairs based on this misrepresentation, and that he did not have sufficient time to review the actual terms of the warranty at the time he paid the repair invoice. Id. ¶¶ 21–22. Plaintiff asserts claims for fraud, negligence, violation of the South Carolina Unfair Trade Practices Act, promissory estoppel, and breach of warranty. Id. ¶¶ 39–64.

Plaintiff initially filed his Complaint in this matter in Cobb County State Court, and Defendants removed to this Court on August 16, 2018. Dkt. No. [1-1]. Defendants now seek dismissal based on lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Dkt. No. [4].

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to challenge a plaintiff's claim by filing a motion to dismiss for lack of personal jurisdiction.

Fed. R. Civ. P. 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." <u>Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.</u>, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted). <u>See also</u> <u>Posner v. Essex Ins. Co., Ltd.</u>, 178 F.3d 1209, 1214 (11th Cir. 1999). "[A] federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." <u>Diamond Crystal Brands</u>, 593 F.3d at 1257-58 (quoting <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1274 (11th Cir. 2009)).

For the constitutional prong of the inquiry to be satisfied, a defendant must have "established certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." <u>Diamond Crystal Brands</u>, 593 F.3d at 1267 (citations, quotations, and alteration omitted). However, District Courts in Georgia should take care not to conflate the two inquiries because Georgia's long-arm statute does not provide personal jurisdiction that is coextensive with due process. <u>Id.</u> at 1259. Instead, the long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." <u>Id.</u>

Even if the Court finds that the plaintiff has made out a prima facie case of jurisdiction, if the defendant then challenges the plaintiff's allegations of jurisdiction and supports the challenge with affidavit evidence, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. Id. at 1257. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." Id. (citation omitted). "The court construes the allegations in the complaint as true to the extent that they are uncontroverted by defendant's evidence." Paul, Hastings, Jonofsky & Walker, LLP v. City of Tulsa, Okla., 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002).

### III. DISCUSSION

As a preliminary matter, Defendants ask the Court to treat their Motion to Dismiss as unopposed in light of Plaintiff's failure to file a timely Response. See Dkt. No. [10] at 1-2. The Motion to Dismiss was filed on August 21, 2018. Dkt. No. [4]. Plaintiff's Response was thus due on September 4, 2018. See LR 7.1B, NDGa. However, Plaintiff did not file his Response [8] until September 6, 2018, thereby indicating no opposition to the motion pursuant to the Local Rules. LR 7.1B, NDGa. Therefore, Defendants rightly note that the Court, in its discretion, may decline to consider Plaintiff's Response altogether. LR 7.1F, NDGa. Nonetheless, because the Court finds that Defendants' Motion should be granted on the merits, the Court declines to disregard the Response brief due to Plaintiff's untimeliness. The Court now turns to the merits.

Defendants contend that exercising personal jurisdiction is improper under both Georgia's long-arm statute and the due process clause of the Fourteenth Amendment. Dkt. No. [4-1] at 7–10. First, Defendants assert that the contract relating to the repairs was performed in South Carolina and did not contemplate an ongoing relationship between the parties, as necessary to establish personal jurisdiction through a single contract. Id. at 8. Second, Defendants argue exercising personal jurisdiction over them in this forum would not comport with traditional notions of fair play and substantial justice because (1) Defendants did not solicit business from Plaintiff—rather, the garage performed the repairs at Plaintiff's request after his car broke down in South Carolina, and (2) Defendants otherwise had no reason to expect being haled into court in Georgia. Id. at 10.[2]

### A. **Georgia's Long-Arm Statute**

The relevant portion of the Georgia long-arm statute provides as follows:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:
>
> (1) Transacts any business within this state;

---

[2] In further support of the Motion to Dismiss, Defendants submitted three affidavits to establish that each Defendant lacks minimum contacts with Georgia to support jurisdiction. See Dkt. No. [4-2]. However, as these affidavits do not controvert any of the evidence Plaintiff presented in support of jurisdiction, the Court need not grapple with the affidavit evidence to decide the Motion.

>   (2)   Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
>   (3)   Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state[.]

O.C.G.A. §§ 9-10-91(1)-(3).

In his Complaint, Plaintiff initially argued that Defendants are subject to personal jurisdiction in Georgia under subsection (3) of Georgia's long-arm statute, O.C.G.A. § 9-10-91. Dkt. No. [1-1] ¶¶ 1-2. Specifically, the Complaint asserted that Defendants are covered by subsection (3) because Defendants caused a tortious injury in Georgia, although their alleged tortious acts occurred outside Georgia.[3] Dkt. No. [1-1] ¶¶ 1-2. However, in his Response to the present Motion, Plaintiff now argues that Defendants are covered under subsection (1) because they transacted business with Plaintiff, a Georgia resident, while Plaintiff was in Georgia. Dkt. No. [8] at 1-12.

A non-resident defendant is said to have transacted business in Georgia for the purposes of personal jurisdiction under O.C.G.A. § 9-10-91(1) if he has

---

[3] In his Response brief, Plaintiff explains that he mistakenly cited to subsection (3) rather than (2) in his Complaint. Dkt. No. [8] at 16. The Court fails to see how (2) applies any better than (3), particularly given Plaintiff's acknowledgment in the Complaint that the alleged tortious injury was "caused by an act or omission outside this state[.]" Dkt. No. [1-1] ¶ 1. In any event, Plaintiff's Response primarily relies on subsection (1) to support jurisdiction under the long-arm statute.

7

purposefully "consummated some transaction" in Georgia. Diamond Crystal Brands, 593 F.3d at 1260 (quoting Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 736-37 (Ga. Ct. App. 2006)). "Accordingly, subsection (1) long-arm jurisdiction in Georgia expressly depends on the actual transaction of business—the doing of some act or consummation of some transaction—by the defendant in the state." Diamond Crystal Brands, 593 F.3d at 1260. However, the non-resident defendant need not be physically present in Georgia while transacting business to satisfy the statute. Id. at 1260-61. Even "intangible acts," like mail and telephone calls to Georgia, should be considered in the analysis. Id. at 1264. Nonetheless, "literally transacting business within Georgia remains a precondition to long-arm jurisdiction that is independent from the dictates of due process." Id. at 1261.

The long-arm inquiry is a close call. Plaintiff's asserted basis for subsection (1) jurisdiction under the long-arm statute is that the Defendant garage "had a contract with [Plaintiff], a Georgia resident, to repair his car and provide a warranty for the work it performed, with knowledge [Plaintiff] would take the car back to his home state of Georgia, and that its warranty would be delivered or performed for the most part in Georgia." Dkt. No. [8] at 2. Yet the contract was executed in South Carolina, the repairs were performed in South Carolina, and the warranty was delivered in South Carolina, thus weakening any showing that Defendants "literally transact[ed] business within Georgia" by way of the repair contract or the warranty. Diamond Crystal Brands, 593 F.3d at 1261. And Plaintiff's reliance on Defendants' "knowledge" that Plaintiff would return to

8

Georgia with the car is misplaced insofar as Plaintiff seeks to impermissibly graft a foreseeability standard onto the "[t]ransacts any business" subsection. See id. at 1263 n.15 ("We . . . caution the federal courts of this circuit to resist any temptation to define '[t]ransacts any business' solely or primarily in terms of the 'foreseeability' of an impact on the Georgia forum").

However, Defendants do not rebut Plaintiff's allegations that Defendant Rose informed Plaintiff of the necessary repairs over the phone, that Plaintiff authorized a $1500 deposit payment from his credit card for Defendants to procure a new engine during a second phone call, and that Plaintiff authorized the engine replacement itself during a third phone call, all while Plaintiff was home in Georgia. See Dkt. No. [1-1] ¶¶ 9-11. Therefore, while the transaction was initiated in South Carolina and ultimately consummated in South Carolina when Plaintiff paid the final invoice in person, Defendant Turner's intangibly conducted at least one transaction in Georgia when Defendant Rose arranged and accepted the $1500 deposit for the new engine from Plaintiff over the phone. Further, the terms of the contract were negotiated almost entirely over the phone because Defendants did not evaluate the necessary repairs—or receive authorization to perform them—until after Plaintiff had returned to Georgia. As the Eleventh Circuit explained in Diamond Crystal Brands, the "mixed law and fact inquiry" into whether a nonresident defendant can fairly be said to have transacted business within Georgia is greatly assisted by turning to the literal

9

definitions of the words in the statute. 593 F.3d at 1264 n.18. To that end, the court noted:

> "Transact" means "to prosecute negotiations," to "carry on business," "to carry out," or "to carry on." Webster's Third New Int'l Dictionary 2425 (1993). "Any" means "to any extent" or "in any degree." Id. at 97. "Business" means "activity directed toward some end," or "a usually commercial or mercantile activity customarily engaged in as a means of livelihood," or "transactions, dealings, or intercourse of any nature." Id. at 302.

Diamond Crystal Brands, 593 F.3d at 1264 n.18. Under such a broad-sweeping scope, Defendant Rose's phone calls with Plaintiff negotiating the agreement to repair Plaintiff's car and accepting a $1500 deposit over the phone on behalf of Defendant Turner's meet subsection (1) of the long-arm statute. Arguably, Plaintiff's discussion over the phone with individual Defendant Turner regarding the warranty coverage also constitutes transaction of business in Georgia, given that the discussion was part of the ongoing business between the parties stemming from their contract.

In any event, the Court need not decide the close question of whether Plaintiff's Complaint successfully establishes Georgia long-arm jurisdiction over all Defendants. Instead, because the record does not present a close question for step two of the jurisdictional inquiry, Defendants' Motion can be readily resolved without further analysis at step one.

### B. **Constitutional Due Process Inquiry**

The constitutional prong of the personal jurisdiction inquiry is governed by a three-part due process test, which requires the Court to determine:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) and Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (other citations omitted). The plaintiff has the burden to establish the first two parts of the test, and, if the plaintiff does so, the burden then shifts to the defendant to "make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id. (quoting Diamond Crystal Brands, 593 F.3d at 1267) (internal quotation omitted).

In intentional tort cases,[4] the plaintiff may meet the "purposeful availment" prong by alleging facts sufficient to satisfy either the "effects test" established in Calder v. Jones, 465 U.S. 783 (1984), or the traditional "minimum contacts" test, which is broadly applied and not limited to intentional tort cases. Mosseri, 736 F.3d at 1356-57. Under the effects test, "a nonresident defendant's single tortious act can establish purposeful availment" if the tort "(1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." Id. at

---

[4] While the majority of Plaintiff's claims are contractual, Plaintiff also alleges fraud. Dkt. No. [1-1] ¶¶ 39-41.

1356 (quoting Licciardello v. Lovelady, 544 F.3d 1280, 1286 (11th Cir. 2008)) (internal alterations omitted). Under the minimum contacts test, the nonresident defendant's contacts with the forum state are assessed by asking whether those contacts "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." Mosseri, 736 F.3d at 1357 (citing S.E.C. v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997)).

Plaintiff does not specify whether he claims to have shown purposeful availment under the effects test or the minimum contacts test. Plaintiff's brief in response to the present Motion in fact makes no mention of either test and repeatedly elides between the analysis governing whether Georgia long-arm jurisdiction exists and the relevant constitutional due process analysis. See Dkt. No. [8] at 4-12, 17-18. Indeed, it appears from the brief that Plaintiff believes establishing long-arm jurisdiction under O.C.G.A. § 9-10-91(1) is all that is required to defeat Defendants' Motion. See, e.g., id. at 7 ("Defendants' telephone communications with [Plaintiff] and their acceptance [of Plaintiff's] Georgia based credit card account payment for the contracted work, with knowledge he was taking the car back to Georgia, were sufficient to establish constitutionally permissible jurisdiction over them under O.C.G.A. § 9-10-91[(1)]."). However, whether the exercise of jurisdiction is constitutionally permissible is a separate question not to be conflated with whether it is permitted by the Georgia long-arm

statute. See Innovative Clinical & Consulting Svcs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352, 355 (Ga. 2005) (construing subsection (1) "as reaching only to the maximum extent permitted by procedural due process." (internal quotations and citation omitted)); Diamond Crystal Brands, 593 F.3d at 1261 (explaining that the language just quoted from Innovative Clinical "makes clear that due process concerns may limit the full extent of the 'transacts any business prong'" but "does not mean that the two inquiries are one and the same.").

   Regardless of which test is applied, Plaintiff has not met his burden of establishing purposeful availment. As Plaintiff notes in his Response, [8] at 4, Georgia has an interest "in providing its own citizens with a convenient forum for redressing injuries wrought by nonresidents who have sought the state's citizens out for the purpose of business gain." First Nat'l Bank of Ames v. Innovative Clinical & Consulting Svcs., LLC, 634 S.E.2d 88, 90 (Ga. Ct. App. 2006) (citing Burger King, 471 U.S. at 474-75). Therefore, such a showing—that nonresident Defendants sought out Georgia resident Plaintiff for the purpose of business gain—would meet the minimum contacts test. Moreover, such a showing could not be defeated by the lack of Defendants' physical presence in Georgia so long as Defendants' efforts were "purposefully directed" toward Plaintiff. Burger King, 471 U.S. at 476. Yet Plaintiff has made no such showing. Instead, Plaintiff sought out Defendants' business due to an unexpected car breakdown while he was in South Carolina. This is exactly the type of "random, fortuitous, or attenuated" contact that cannot show purposeful availment. Id. at 475 (quotations and

citations omitted). Rather, jurisdiction is proper only "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." Id. (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

Relying on Diamond Crystal Brands, Plaintiff argues that Defendants did purposefully direct their actions at Georgia when they discussed the details of the repairs over the phone with Plaintiff while he was in Georgia. Dkt. No. [8] at 10-12. In Diamond Crystal Brands, the Eleventh Circuit held that a California distribution company maintained a "substantial and ongoing relationship" with a Georgia manufacturer sufficient to establish personal jurisdiction in Georgia when it engaged in 14 transactions to purchase sweetener from the Delaware company that owned the Georgia manufacturer, delivery of the product and transfer of legal title to the product occurred in Georgia, and the defendant sent payments to Georgia for 12 of the 14 transactions. 593 F.3d at 1267-70. Plaintiff notes that "mail, telephone calls, and other intangible acts done in furtherance of" these transactions partly informed the Eleventh Circuit's decision that the defendant transacted business in Georgia sufficient to establish personal jurisdiction under the minimum contacts test. He argues that the same result should obtain here based on Defendants' phone calls with Plaintiff. Id. at 11.

However, the proper inquiry in determining whether a defendant is subject to specific jurisdiction is whether a defendant has created minimum contacts with *the forum*, not with the plaintiff in a suit. See Walden v. Fiore, 571 U.S. 277,

14

285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). See also Waite v. All Acquisition Corp., 901 F.3d 1307, 1316 (11th Cir. 2018). And unlike the facts supporting jurisdiction in Diamond Crystal Brands, there is no showing of a "substantial and ongoing" relationship between the parties. Rather, Defendants' only established connection with Georgia is through their repair of Plaintiff's car. Yet "mere injury to a forum resident is not a sufficient connection to the forum" to create specific jurisdiction under either the minimum contacts test or the Calder effects test. Walden, 571 U.S. at 290; Aviation One of Fl., Inc. v. Airborne Ins. Consultants, Ltd., 722 F. App'x 870, 880 (11th Cir. 2018) ("But the defendant's relationship to the plaintiff, standing alone, is an insufficient basis for jurisdiction.") (internal quotations omitted).

Here, the record contains no evidence that Defendants conducted any business in Georgia except by way of the fortuitous contact with Plaintiff arising out of his travel in South Carolina. Further, Defendants repaired Plaintiff's vehicle only after Plaintiff reached out to them, the repairs were performed in South Carolina, and the parties both initiated and consummated the transaction in person in South Carolina. As the Supreme Court noted in Walden, contacts between a defendant and a forum resident plaintiff will not create specific jurisdiction unless those contacts establish that "the defendant's conduct connects him *to the forum* in a meaningful way." 571 U.S. at 289-90 (emphasis

15

added). Thus, Defendants cannot be subject to personal jurisdiction unless the repairs created minimum contacts with the forum state itself, not just contacts with Plaintiff. Plaintiff has not made the requisite showing.

In sum, the Court finds that Plaintiff has not met the purposeful availment prong of the three-part constitutional due process analysis pursuant to either the minimum contacts test or the effects test. Specifically, Plaintiff has not shown that Defendants' conduct was aimed at the forum state or that their contacts with Plaintiff connected them with the forum state itself in a meaningful way. Plaintiff has thus failed to make out a prima facie case of specific jurisdiction.

## IV. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint [4]. This action is hereby **DISMISSED WITHOUT PREJUDICE**.

The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 1st day of November, 2018.

*/s/ Leigh Martin May*
LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE